26 So.2d 574

### BOWLINE v. COX.

2 Div. 223.

Supreme Court of Alabama.

June 13, 1946.

Wilkinson & Wilkinson, of Selma, for appellant.

Royal Randolph Smith, of Selma, for appellee.

GARDNER, Chief Justice.

The suit is in detinue by the administrator of the estate of Francis Bowline, deceased, against defendant C. K. Cox for the recovery of a diamond ring of the value of $2,000. There was verdict and judgment for the defendant, from which the plaintiff prosecutes this appeal.

It is clearly established by the proof that the ring in question formerly belonged to Francis Bowline, plaintiff's intestate, who died at the age of 74 in December, 1945, and that on numerous occasions decedent had been seen wearing this ring. Bowline was a widower, his wife having died in 1939, and counsel for appellee states in brief the couple had no children, though our study of the record fails to disclose that this particular fact was brought out in the proof.

A short time following the death of Bowline, one Wooley, decedent's brother-in-law, asked the defendant Cox if he knew where all of Bowline's diamonds were. In the course of the conversation it was stated that a large diamond ring had not yet been found. Cox at that time had said nothing about this particular ring, but

when it was mentioned, he pulled his hand out of his pocket and said: "There is the ring. Frank gave me that ring." He stated that he had had it since 1942. Wooley then stated to Cox, that if he could prove to the heirs that Bowline did give him the ring, to bring the proof to the administrator and that would be all that was necessary.

The nearest definite time fixed by Cox in his testimony was that he secured possession of this ring in the summer of 1942. There was much evidence that Cox had had the ring and had worn it more or less constantly since that date, and that Bowline had visited the store where Cox was employed on numerous occasions and no objection was ever heard to have been interposed to his use of it. On the other hand, there was evidence offered by the plaintiff tending to show that Bowline himself had been wearing this ring on many occasions following the summer of 1942, and that he had been heard to say that he had let Cox "splurge the ring."

There was no blood relationship between Bowline and Cox, but unquestionably they were great friends. We gather from the record that Cox was much the younger, and had, when quite a young man, some 16 years of age, boarded in the home of Bowline and his wife for a period of three years.

Plaintiff offered to show that, at the time Cox claimed Bowline gave him this ring the latter was indebted to Cox in the sum of $600, which was secured by a mortgage on his home; that the mortgage was marked "paid in full and satisfied of record February 22nd, 1946," which satisfaction was signed by defendant Cox and attested by the probate clerk. Plaintiff further offered receipts in varying amounts, signed by Cox: one dated September 5, 1942, for $36 interest on mortgage, another dated August 18, 1943, in the sum of $200 on account of mortgage, still another of September 17, 1943, in the sum of $24 marked "for mortgage and interest in full." And the last receipt offered was for $400 dated March 30, 1943, with the recital "received of F. J. Bowline $400.00 on mortgage. C. K. Cox."

Defendant's objection to the introduction in evidence of this cancelled mortgage and of the above-noted receipts was sustained, and this ruling of the court presents the only question here for review. It was the theory of the plaintiff that he should be permitted to show the relation between the parties at the time of the purported gift of this valuable ring, i. e., that aside from the relationship, which was clearly established, there was also existing the relationship of debtor and creditor. The trial judge was of the opinion this evidence was too remote from the issue involved, and persistently ruled that the proffered proof was inadmissible.

■ As a background for our thought upon the question here presented, it should be borne in mind that the result of this litigation turns entirely upon circumstantial evidence. The declaration of Cox, who was in possession of the ring, to the effect that he claimed the property was inadmissible as substantive evidence of the gift, but was admissible as a part of the res gestae of his possession, as tending to show claim of ownership or to rebut any inference of an admission against his ownership arising from the production of the property upon the request of another. 28 C.J. p. 676; 38 C.J.S., Gifts, § 66; Couch v. Couch, 141 Ala. 361, 37 So. 405.

■■ As to circumstantial evidence, its competency, of course, is not open to question provided that it is the best evidence which the nature of the case admits. But when the necessity for resort to circumstantial evidence arises, either from the nature of the inquiry or the failure of direct proof, considerable latitude is allowed in its reception. As we read the authorities, no evidence should be excluded of any fact or circumstance connected with the principal transaction in dispute from which an inference as to the truth of the disputed fact can reasonably be made. Some of the cases hold that objections upon the ground of irrelevancy are not favored, for the reason that the force and effect of circumstantial facts usually, and almost necessarily, depend upon their connection with each other. Upon the issue of reasonableness of conduct all the surrounding circumstances become facts material to the case. 20 Am. Jur. pp. 258 and 259.

■ And upon the subject of gifts, treated in 28 C.J. p. 675, 38 C.J.S. Gifts, § 15, the text notes that the situation, the relation, and circumstances of the parties and of the subject of the gift may be taken into consideration in determining the intention of the parties.

■ The burden of proof is on one claiming to be the donee of property to establish all facts essential to the validity of such gift by clear and convincing proof. Davis v. Wachter, 224 Ala. 306, 140 So. 361.

And in Montgomery v. McNutt, 214 Ala. 692, 108 So. 752, 754, where also was the question whether or not a gift was intended, the Court observed: "This means, of course, that the relations between the parties to the conveyance and their circumstances are to be considered in connection with other relevant and competent facts."

■ And the authorities are to the effect that ordinarily an unexplained payment of money will be presumed to be made in payment of a debt, or as a loan, rather than as a gift. We say "ordinarily" as there are, of course, exceptions to the general rule, as illustrated by a gift from a husband to the wife. 28 C.J. pp. 669, 670, Sec. 71, 38 C.J.S., Gifts, § 65.

This general rule was given application by the Iowa Court in Re Willmott, 71 A.L.R. 1018, where the Court observed: "It is a correct doctrine to say that payments of money made by a debtor to an existing creditor, or made by one who is under obligation to pay to the receiver thereof, such payments will be deemed presumptively to apply as credits upon the obligation, and not as gratuities or gifts."

In that particular case the relationship was that of grandmother and grandchild, the latter claiming compensation for services rendered, and the proof showing various gifts during that period. The Court was of the opinion that if there was a definite understanding for full payment of services, then the alleged gifts placed the grandmother in a rather inconsistent attitude of making liberal gratuities and yet neglecting to pay any part of the contractual obligation. It was observed, however, that of

58

course this rule of presumption does not render it legally impossible for a debtor to make a money gift to a creditor. But to prove that such a gift was made under such circumstances casts upon the creditor a very substantial burden. The authorities cited in the note appear to sustain this general rule, with exceptions, of course, not here pertinent.

True, proof offered by the plaintiff would tend to show full payment otherwise of the mortgage indebtedness, and of consequence, this particular rule would be without application to the instant case. However, we think it serves to illustrate the principle involved; that is, the right of plaintiff to show that, aside from the friendly relations existing between the parties, there was also the relationship of creditor and debtor. All of this to the end that, upon the issue of reasonableness of conduct the jury may consider all the surrounding facts and circumstances to determine whether or not the decedent intended to make a gift of this ring.

We are persuaded, therefore, that the plaintiff should have been permitted to have this proof before the jury for whatever it was worth in considering the question of fact, which was here wholly dependent upon circumstantial evidence. For the error as to the ruling on this evidence, the judgment is reversed and the cause remanded.

Reversed and remanded.

FOSTER, LIVINGSTON, LAWSON, and STAKELY, JJ., concur.